IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

ONE EQUITY CORPORATION, et al.,

Defendants.

Case No. 2:08-cv-0667

JUDGE EDMUND A. SARGUS, JR.

MAGISTRATE JUDGE MARK R. ABEL

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion of Court Appointed Receiver for Turnover of Stock Shares in China Sunergy Co., Ltd. ("C-SUN"), Owned by Marshal-Light Trading Partners, Inc. (Document 73.) For the reasons that follow, the Court **GRANTS** the Receiver's motion (Document 73).

### I. Background

The Receiver has moved the Court to order the turnover to him of certain shares (the "Shares") of China Sunergy Co., Ltd. ("C-SUN"). Prior to the events described below, the Shares were owned by Elite Shine Group Limited, Brightest Power Holdings Limited, and Luck Great Investments Limited (collectively, the "C-SUN Parties"). As of July 9, 2008, the Shares were registered in the name of Marshal-Light by JPMorgan Chase Bank, N.A., as depositary (the "Depositary"), apparently pursuant to negotiations for a stock loan agreement. (Pl.'s Hr'g Exs. B, C, D, E.) The Shares have not been re-registered or re-titled since that date. (Pl.'s Hr'g Ex. E.)

On July 10, 2008, alleging a fraudulent stock-based loan program, the SEC filed the complaint in this case (Doc. 2), and the Court entered a temporary restraining order enjoining, among other entities, Triangle Equities Group, Inc. ("Triangle"), Victory, and "all persons or

business entities acting on behalf of or in concert with" Triangle or Victory from entering into any binding financial transaction or making any disbursement (Doc. 9). On July 17, 2008, the Court appointed the Receiver and ordered the following:

> (i) "No shareholders, partners, members, or trustees of any of [the] corporations, partnerships, limited liability companies, or trusts that are among the Receiver Estates shall exercise any of their rights or powers with respect to the Receiver Estates until further order of the Court." (Doc. 14 at Part XI.)

> (ii) "the Corporate Defendants as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receiver Estates, and any persons receiving notice of this order . . . are hereby restrained and enjoined from disposing, transferring, exchanging, assigning or in any way conveying any property or assets of the Receiver Estates and from the transaction of any business of the Receiver Estates except with the approval of the Receiver." (Doc. 14 at Part XII.)

> (iii) "the Corporate Defendants, their agents, servants, employees, nominees, attorneys and entities under their direct or indirect control shall cooperate with and assist the Receiver and shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver, in the performance of his duties." (Doc. 14 at Part XIV (emphasis added).)

On August 1, 2008,[1] the C-SUN Parties[2] entered into a loan agreement with Marshal-Light whereby Marshal-Light agreed to provide a loan and the C-SUN Parties pledged the Shares to Marshal-Light as collateral for the loan's repayment. Paragraph 8 of the Stock Loan Agreement provided that:

> should the loan fail to fund within ten (10) business days after Marshal-Light receives newly issued share certificates (transferred shares) for any reason whatsoever, the Shares shall be promptly transferred and delivered back to you or your designated parties, namely Elite Shine Group Limited (5 million ADSs), Brightest Power Holdings Limited (1.6 million ADSs), and Luck Great Investments Limited (1 million ADSs), and Marshal-Light shall reconvey and terminate any and all security over such Shares, and execute all such documents

---

[1] The C-SUN Parties executed the agreement on July 17, 2008; Marshal-Light executed the agreement on August 1, 2008. (Def.'s Mem. Opp'n Ex. A at 6.)

[2] Ivory Tower Group Limited ("Ivory Tower") was the party to the agreement with Marshal-Light; according to the C-SUN Parties, Ivory Tower is an affiliate of the C-SUN Parties. (Mem. Opp'n. 2.) For the purposes of this Opinion and Order, the Court will refer to the C-SUN Parties and Ivory Tower collectively as the "C-SUN Parties."

2

and perform such actions as may reasonably be requested by you in furtherance thereof.

(Def.'s Mem. Opp'n Ex. A at 2.) According to the C-SUN Parties, Ivory Tower caused the Depositary to deliver the Shares, represented by certificates (the "Share Certificates") to Marshal-Light's offices in New York on July 28, 2008, consistent with its contractual obligations. (Mem. Opp'n 4.) It is undisputed, however, that Marshal-Light never provided the loan to the C-SUN Parties.

The C-SUN Parties assert that on August 6, 2008, the SEC informed the C-SUN Parties' counsel that Marshal-Light was under investigation. (Mem. Opp'n 4.) On August 15, 2008, Ivory Tower sent a letter to Marshal-Light stating that "China Sunergy Co., Ltd. has received a regulatory inquiry from the US Securities and Exchange Commission which remains ongoing and which prevents us from completing the transfer and delivery of shares contemplated" by the stock loan agreement. The letter states that "[b]ecause of the above circumstances, the subject shares have been cancelled. By copy of this letter, [counsel for Marshal-Light] is requested to return the share certificates that he is holding to us." (Mem. Opp'n Ex. B.) The C-SUN Parties assert that Marshal-Light acknowledged that the transaction had been cancelled and returned the Share Certificates to the C-SUN Parties pursuant to the stock loan agreement. (Mem. Opp'n 5 (citing Mem. Opp'n Ex. C).) It is undisputed that the Share Certificates were not endorsed.

The C-SUN Parties assert that the SEC contacted them on August 18, 2008 to express concern that the Share Certificates returned by Marshal-Light might not be authentic. (Mem. Opp'n 5.) At the SEC's suggestion, the C-SUN Parties sent the Share Certificates to the Depositary to confirm their authenticity. (*Id.*) The Depositary confirmed authenticity on September 8, 2008, but retained custody of the certificates pending receipt of stock power forms

3

to be executed by Marshal-Light that would reregister the securities from Marshal-Light to the C-SUN Parties. (*Id.*)

On September 16, 2008, the Court approved the Receiver's Preliminary Report, finding that "the business known as Marshal-Light Trading Partners, Inc. and/or its subsidiaries shall be subject to the receivership proceeding . . . and subject to the same authority and restrictions as set forth in the Court's Order Appointing Receiver over the corporate Defendants dated July 17, 2008 (Docket No. 14)." (Doc. 39.)

## II. Analysis

According to the C-SUN Parties, the Shares do not belong in the receivership estate because Marshal-Light had no interest in the Shares when that company was placed into receivership on September 16, 2008. It is undisputed that the Shares were then, and still are, titled in Marshal-Light's name. However, the C-SUN Parties contend that ownership of the Shares was effectively transferred to the C-SUN Parties when Marshal-Light returned the Share Certificates to the C-SUN Parties in August 2008.

To support their claim, the C-SUN Parties first point to the New York Uniform Commercial Code (U.C.C.). The C-SUN Parties assert that the U.C.C. controls the ownership of the Shares, noting that the stock loan agreement provides that the shares are "subject to . . . the laws [of] . . . the State of New York."[3] (Mem. Opp'n Ex. A at 6.) Section 8-304(d) of the U.C.C. provides:

> If a security certificate in registered form has been delivered to a purchaser without a necessary indorsement, <u>the purchaser may become a protected</u>

---

[3] The Receiver contends that N.Y. U.C.C. § 8-304 does not control, pointing to case law holding that N.Y. U.C.C. § 8-503 does not apply in insolvency proceedings. (Reply Mem. 7 (citing *S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80 (2d Cir. 2002).) That holding was based on the official comment to § 8-503, however, which provides that in an insolvency proceeding, insolvency law, rather than § 8-503, governs. N.Y. U.C.C. § 8-503 Comment 1.

4

purchaser[4] only when the indorsement is supplied. However, against a transferor, a transfer is complete upon delivery and the purchaser has a specifically enforceable right to have any necessary indorsement supplied.

N.Y. U.C.C. § 8-304(d) (emphasis added). The comments to that section provide:

> Subsection (d) deals with the effect of delivery without indorsement. As between the parties the transfer is made complete upon delivery, but the transferee cannot become a protected purchaser until indorsement is made. The indorsement does not operate retroactively, and notice may intervene between delivery and indorsement so as to prevent the transferee from becoming a protected purchaser. Although a purchaser taking without a necessary indorsement may be subject to claims of ownership, any issuer's defense of which the purchaser had no notice at the time of delivery will be cut off, since the provisions of this Article protect all purchasers for value without notice (Section 8-202).

N.Y. U.C.C. § 8-304 Uniform Laws Comment 4 (emphasis added). Thus, if § 8-304 of the U.C.C. controls, Marshal-Light's delivery of the unendorsed Share Certificates to the C-SUN Parties effected the transfer of the Shares back to the C-SUN Parties, as between the parties (the C-SUN Parties and Marshal-Light). Under the same provision, however, transferees are not protected against claims from third parties—and the C-SUN Parties are not protected against claims from the Receiver acting equitably on behalf of all of Marshal-Light's creditors/victims. *See SEC v. Credit Bancorp, Ltd.*, No. 99-civ-11395, 2000 WL 1752979 (S.D.N.Y. Nov. 29, 2000) (holding that the claimants could not succeed "on the theory that the Receiver simply stands in the shoes of" the receivership entity; but their "motion must be resolved in light of the many competing claims to the receivership estate and the equitable principles which apply to this situation").

The Receiver correctly asserts that if the U.C.C. applies, it also gives effect to the terms of the agreement between the Depositary and Marshal-Light. (Reply Mem. 8 (citing N.Y.

---

[4] A "protected purchaser . . . acquires its interest in the security free of any adverse claim." N.Y. U.C.C. § 8-303(b).

U.C.C. § 1-102(3) ("The effect of provisions of this Act may be varied by agreement.")).) The agreement, certain terms of which are contained on the face of the Share Certificates, provides:

> Title to this Restricted ADR (and to the Deposited Securities represented by the Restricted ADSs evidenced hereby), when properly endorsed (in the case of Restricted ADRs in certificated form) or upon delivery to the Depositary of proper instruments of transfer, is transferable by delivery . . .; provided that the Depositary . . . may treat the person in whose name this Restricted ADR is registered on the Restricted ADR Register as the absolute owner hereof for all purposes.

(Pl.'s Hr'g Exs. B, C, D, each at ¶ 3.)

Thus, regardless of whether the U.C.C. applies, the agreement between Marshal-Light and the Depositary requires that, in order to effect a transfer of title, delivery must be made with either (i) endorsement or (ii) proper instruments of transfer. Moreover, the agreement provides that the Depositary may treat the registered owner—undisputedly Marshal-Light—"as the absolute owner . . . for all purposes." Under these terms, a transfer of title did not occur, as Marshal-Light delivered the Share Certificates with neither an endorsement nor proper instruments of transfer.

The C-SUN Parties also contend that the Eighth Circuit's 1962 decision in *East v. Crowdus*, 302 F.2d 645, supports a decision in their favor. In *Crowdus*, the plaintiff investor retained a broker to purchase shares of stock. *Id.*, 302 F.2d at 648. The broker completed the transaction, but instead of registering the shares to the plaintiff, he registered them in the name of the broker's own affiliate. *Id.*, 302 F.2d at 648. The broker was then placed under receivership. *Id.*, 302 F.2d at 648. Relying on case law applicable to the "particular legal relationship between a 'customer and stockbroker,'" the Eighth Circuit held that the parties' rights did not depend on the name or designation on the stock certificates, and excluded the shares from the receivership estate. *Id.*, 302 F.2d at 649–51. Because this case does not involve a stockbroker/customer relationship, however, *Crowdus* is distinguishable.

6

The crux of the C-SUN Parties' claim appears to be that they have an equitable or beneficial right to the Shares. Where a receivership entity holds legal title to an asset, however, such a right is not sufficient to keep the asset out of the receivership estate. *See Credit Bancorp, Ltd.*, 290 F.3d at 84, 88–89 (where the agreement between the claimant and the defrauder provided that "beneficial ownership to the Assets shall at all times remain with [the claimant]," and legal title was transferred to the defrauder, the court held that "whatever beneficial interest [the claimant] might have in the transferred shares . . . does not defeat the equitable authority of the District Court to treat all the fraud victims alike"). Moreover, an award of the Shares to the C-SUN Parties, based on their equitable or beneficial interest in the Shares, would be equitable award, and as the Eleventh Circuit has noted, when "all of the former securities owners occupied the same legal position, it would not be equitable to give some of them preferential treatment in equity." *S.E.C. v. Elliott*, 953 F.2d 1560, 1570 (11th Cir. 1992).

Regardless of the exact nature of Marshal-Light's interest in the Shares at the time Marshal-Light was placed into receivership, the Court finds that equity requires the turnover of the Shares to the Receiver. Marshal-Light is only one of numerous claimants in the receivership proceedings. The Receiver has represented that it believes that there are over 100 innocent borrowers who were defrauded by the receivership entities, most of which had loan arrangements with the receivership entities that are materially identical to the loan agreement executed by the C-SUN Parties. (Reply 4–5.)

The only way in which the C-SUN Parties' claim differs from the claims of the other defrauded borrowers is that, as a result of the SEC's regulatory inquiry, Marshal-Light delivered the unendorsed Share Certificates back to the C-SUN Parties before Marshal-Light was placed

7

into receivership. As discussed above, this delivery did not effectively transfer legal title of the Shares.

The Court does not doubt that C-SUN Parties have rights against Marshal-Light under their loan agreement with Marshal-Light; however, numerous other parties also have rights against the receivership entities, and every claimant's rights must be considered by the Receiver.

In this Order, the Court does not ultimately determine the final application or distribution of the Shares. At this stage, the Shares are part of the assets to be gathered by the Receiver before final determination of claims and priorities is made.

## III. Conclusion

For the reasons discussed above, the Court **GRANTS** the Motion of Court Appointed Receiver for Turnover of Stock Shares in China Sunergy Co., Ltd. ("C-SUN"), Owned by Marshal-Light Trading Partners, Inc. (Document 73.) The Court hereby **ORDERS** that JPMorgan Chase Bank, N.A. turn over all Restricted American Depositary Shares representing Ordinary Shares of China Sunergy Co., Ltd., held in the name of Marshal-Light, as well as all related agreements and information, to the Receiver.

**IT IS SO ORDERED.**

9-30-2009
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**